JEREMY GORDON
TX Bar No. 24049810
Jeremy Gordon, PLLC
1848 Lone Star Road, Suite 106
Mansfield, Texas 76063
Tel: 972-483-4865
Fax: 972-584-9230
Jeremy@gordondefense.com

*Attorney Pro Hac Vice for Hawthorne*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN HAWTHORNE, <br><br> Movant, <br><br> vs. <br><br> UNITED STATES OF AMERICA, <br><br> Respondent. | Case No.: 16-CV-4037 <br><br> **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255** |

Ryan Hawthorne ("Hawthorne"), by and through the undersigned counsel, respectfully submits this Memorandum of Law in Support of Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255.

## I. BACKGROUND

On September 22, 2009, Hawthorne was charged in Case No. 09-CR-68 ("*Hawthorne I*") by way of a Superseding Indictment with Child Exploitation Enterprise, in violation of 18 U.S.C. § 2252A(g) (Count One), and Conspiracy to Receive, Distribute, Advertise, Solicit, and Possess Child Pornography, in violation of 18 U.S.C. §§ 2251(d)(1)(e) and 2252A(a), (b)(1), and (b)(2) (Count Two). (*Hawthorne I*, Docket Entry ("DE") 37). Count One of the Superseding Indictment was dismissed on April 12, 2010, without prejudice, based on a violation of the

Speedy Trial Act. (*Hawthorne I,* DE 216). On August 31, 2010, Hawthorne was charged in a Second Superseding Indictment. (*Hawthorne I,* DE 282). Count One of the Second Superseding Indictment again charged Hawthorne with a violation of 18 U.S.C. § 2252A(g), and Count Two remained the same. (*Hawthorne I,* DE 282). On October 4, 2010, Hawthorne was arraigned on the Second Superseding Indictment.

On October 5, 2010, Hawthorne was indicted in the United States District Court for the District of South Carolina. *See United States v. Hawthorne*, No. 0:10-cr-00969 (D. S.C.). On July 26, 2011, the South Carolina case was transferred to the Central District of California, Case No. 11-CR-00706 ("*Hawthorne II*"), pursuant to Rule 20 of the Federal Rules of Criminal Procedure. (*Hawthorne II*, DE 1). The South Carolina Indictment charged Hawthorne with violations of 18 U.S.C. § 2251(a) (Count One), and 18 U.S.C. § 2252A(a)(5)(B) (Count Two). (*Hawthorne II*, DE 1).

On August 12, 2011, pursuant to a plea agreement, Hawthorne pled guilty to Count One of the Second Superseding Indictment in *Hawthorne I*. (*Hawthorne I*, DE 534, 583). Although the plea agreement was a "global" agreement, Hawthorne had yet to be arraigned on the Indictment in *Hawthorne II* by the time he entered his guilty plea in *Hawthorne I*. On September 1, 2011, Hawthorne plead guilty to Count One of the Indictment in *Hawthorne II*, pursuant to the same plea agreement. (*Hawthorne II*, DE 15).

Hawthorne appeared for sentencing for both cases on May 21, 2012. However, at the onset of the proceeding, defense counsel indicated to the Court that Hawthorne had raised issues concerning counsel's advice in connection with the plea agreement. Counsel subsequently requested that Hawthorne be appointed second advisory counsel to avoid the potential conflict. The Court continued sentencing, appointed advisory counsel to advise Hawthorne whether there

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 - 2

was a basis to withdraw his guilty plea, and ordered Hawthorne to contribute $2,500 to the Criminal Justice Act. (*Hawthorne I*, DE 996).

On June 13, 2012, Hawthorne's advisory counsel, Mr. David Reed, filed a report regarding Hawthorne's intent to request new counsel and file a motion to withdraw his guilty plea. (*Hawthorne I*, DE 1003). On June 25, 2012, the Court held a status conference hearing wherein appointed attorneys Mr. Pereyra-Suarez and Mr. Reed were relieved from representation and Mr. David Kaloyanides was appointed to represent Hawthorne. (*Hawthorne I*, DE 1016). On August 20, 2012, Hawthorne filed his motion to withdraw guilty plea. (*Hawthorne I*, DE 1037). Hawthorne moved to withdraw his guilty plea because:

> [N]ewly discovered evidence raises a serious question concerning the integrity of some of the government's digital evidence in the case, evidence that was not known to Mr. Hawthorne at the time he entered his plea. Furthermore, Mr. Hawthorne was not sufficiently advised of the direct consequences of entering a plea to Count 1 of the Second Superseding Indictment. The failure of former counsel to properly and sufficiently advise Mr. Hawthorne undermined the voluntariness of his plea and denied Mr. Hawthorne his due process rights under the Fifth Amendment.

(*Hawthorne I*, DE 1037, at 2). Further,

> Under the terms of the plea agreement, Mr. Hawthorne stipulated to over 600 images. However, only after entering the plea agreement did Mr. Hawthorne learn that there was a significant concern regarding the integrity of the government's evidence. It was not until after entering the plea agreement that Mr. Hawthorne's family hired a forensic computer expert to review some of the computer data upon which the government was basing its case. That expert, Jeffrey Fischbach raised serious question as to the integrity of the government's data. Although his review was only a partial review, his conclusion as expressed to Mr. Hawthorne indicated that there should have been a more thorough review of the government's evidence before Mr. Hawthorne entered the plea. Mr. Hawthorne was unaware of the concerns with the integrity of the government's evidence at the time he changed his plea. Former counsel had not hired nor consulted with a forensic computer expert to evaluate the government's electronic evidence.

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 - 3

(*Hawthorne I*, DE 1037, at 7-8). In conjunction with his motion to withdraw his guilty plea, Hawthorne submitted a declaration in support. In his declaration, Hawthorne stated, *inter alia*, that 1) Hawthorne consistently requested counsel review discovery with him; 2) Hawthorne had only reviewed a portion of the government's digital evidence; 3) Hawthorne's attorney advised him that much of the electronic discovery files were "corrupt;" 4) Hawthorne's attorney informed him that an expert would not be appointed after he entered a plea; 5) Hawthorne's family hired a forensic computer expert, Jeffrey Fischbach, who informed Hawthorne that he questioned the extent and integrity of the government's evidence in the case. (*Hawthorne I*, DE 1037, at 20-23).

On September 17, 2012, Hawthorne appeared before the Court for a hearing on the motion to withdraw guilty plea and sentencing. With respect to the motion to withdraw Hawthorne's guilty plea, the Court determined that there had been "no showing of inadequate plea colloquy or any circumstances which didn't exist on the dates that [Hawthorne] entered his pleas." (Sent. Tr., at 7). Further, the Court stated:

> There's no newly discovered evidence here. At most, there's a new theory on the strength of the evidence that existed when the defendant pled. That's the forensic report that the defendant relies on. But that's not new evidence. Its [sic] evidence that the defendant didn't choose to gather until shortly before the date of sentencing. And it's not new evidence in any event. As I said, it's perhaps a new theory as to the strength of the Government's case, but it's not new evidence.

(Sent. Tr., at 7-8). Ultimately, the Court found that there was no "fair and just reason," consistent with Federal Rule of Criminal Procedure 11(d)(2)(B), to withdraw the guilty plea and denied Hawthorne's motion. The Court then proceeded to sentence Hawthorne to a term of 300 months imprisonment. Written judgment was entered on September 18, 2012. (*Hawthorne I*, DE 1091; *Hawthorne II*, DE 31).

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 - 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Hawthorne filed a timely notice of appeal on September 27, 2012. (*Hawthorne I*, DE 1113; *Hawthorne II*, DE 33). On appeal, Hawthorne raised one argument, whether the District Court violated 18 U.S.C. § 3006A by ordering Hawthorne to pay $2,500 for his court appointed attorney. The Ninth Circuit affirmed Hawthorne's contribution order on December 5, 2014.  On February 13, 2015, the Ninth Circuit denied Hawthorne's petition for rehearing *en banc*. *See United States v. Sudduth*, 593 Fed. Appx. 676 (9th Cir. 2015). On April 28, 2015, Hawthorne submitted a petition for writ of *certiorari* to the United States Supreme Court. On June 8, 2015, the Supreme Court denied Hawthorne's petition. *See Hawthorne v. United States*, 135 S.Ct. 2819 (2015).

## II. <u>TIMELINESS</u>

Hawthorne's petition for writ of *certiorari* was denied on June 8, 2015. Therefore, Hawthorne's judgment of conviction became final on June 8, 2015. *Clay v. United States*, 537 U.S. 522 (2003). Pursuant to 28 U.S.C. § 2255(f)(1), Hawthorne's motion is timely filed on or before June 8, 2016.

## III. <u>STANDARD OF REVIEW</u>

Claims of ineffective assistance of counsel are governed by the familiar two-part test of *Strickland v. Washington*, which requires a showing of (1) deficient performance by counsel; and (2) prejudice, which is demonstrated through a reasonable probability of a different outcome in the proceedings. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In the context of guilty pleas, prejudice is demonstrated when a defendant shows that there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Smith v. Mahoney*, 611 F.3d 978, 986 (9th Cir. 2010).

1

## IV. ARGUMENT

**GROUND ONE:        COUNSEL WAS INEFFECTIVE FOR FAILING TO
INVESTIGATE THE FACTS OF THE CASE; HAD
HAWTHORNE BEEN ADEQUATELY ADVISED,
HAWTHORNE WOULD NOT HAVE PLEAD GUILTY
AND INSTEAD PROCEEDED TO TRIAL**

The record in this case clearly supports that Hawthorne was not adequately advised with

regard to entering his guilty pleas. As discussed above, Hawthorne was represented in the plea

proceedings by attorney Charles Pereyra-Suarez. After receiving appointed second advisory

counsel, and later substitute appointed counsel, Hawthorne filed a motion to withdraw his guilty

pleas. The motion largely relied on two arguments as fair and just reasons to allow Hawthorne to

withdraw his guilty plea. First, Hawthorne alleged that "newly discovered evidence raise[d] a

serious question concerning the integrity of some of the government's digital evidence in the

case, evidence that was not known to Mr. Hawthorne at the time he entered his plea." (DE 1037).

Second, Hawthorne alleged that he was not sufficiently advised of the direct consequences of

entering a plea to Count One of the Superseding Indictment. *Id*.

With respect to the "newly discovered evidence," Hawthorne stated the following:

> Here, Mr. Hawthorne learned after his guilty plea that there was a serious
> question concerning the integrity of the digital evidence, the computer files, on
> which the government had based its case. While this information was not
> conclusive, for the forensic expert had not completed a comprehensive review of
> the evidence, it is sufficient that *after* his guilty plea, Mr. Hawthorne was alerted
> to the weakness in part of the government's case. It is not for the Court to
> evaluate the strength or weakness of such evidence at this juncture. It is sufficient
> that Mr. Hawthorne did not have this information at the time he entered his guilty
> plea. This is the type of newly discovered evidence that would plausibly motivate
> a reasonable person in Mr. Hawthorne's position not to have entered this plea
> agreement.

(DE 1037, at 15). Indeed, Hawthorne submitted a declaration in concurrence with his motion to

withdraw his guilty pleas that stated, *inter alia*,

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE, SET ASIDE, OR CORRECT
SENTENCE PURSUANT TO 28 U.S.C. § 2255 - 6

2.      While my case has been pending, I continually requested that my attorney review all the discovery with me. While I was always interested in a plea agreement, I still wanted to see the government's evidence against me. In fact, I made several statements about what I had done to investigators in this case.

3.      I reviewed some of the discovery in the California case, the case indicted in Los Angeles, but I never reviewed any discovery from the South Carolina case.

…

10.      I also understood that the plea agreement applied to the South Carolina case as well and that I would be pleading to the first count in that case. During my discussions with my attorney about a plea agreement in the South Carolina case, I had asked my attorney several times about the evidence related to the charges in that case. Initially, I was informed that my attorney had not received any discovery from South Carolina. Some time later, I was informed that he had received some materials but that the files were corrupt, and he could not review the material. Finally, my attorney told me that he had reviewed "some" of the material from South Carolina and that it was "much the same" as the evidence in the California case.

11.      After I entered my guilty plea, I learned for the first time that the evidence in my case had not been examined in order to determine if there were problems with the integrity of the electronic data. Prior to this, I did not know that cases such as mine required analysis by a forensic computer expert to determine the strength and weaknesses of the government's evidence.

…

13.      My family hired a forensic computer expert, Jeffrey Fischbach. I consulted with Mr. Fischbach three times regarding my case. Mr. Fischbach informed me that he had reviewed a portion of the government's computer data and evidence in my case….[Mr. Fischbach] did state that from what he reviewed, he questioned the extent and integrity of the government's evidence in the case.

14.      I did not know that I had the opportunity nor the need for such expert review of the evidence in my case. I had never been advised by my attorney prior to entering my plea that this type of expert analysis was necessary or even the usual approach in my type of case. Had I known this, I would have requested that such analysis be done before entering any plea agreement.

(DE 1037, at 20-23).

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 - 7

At Hawthorne's sentencing hearing, the Court addressed Hawthorne's argument that the above "newly discovered evidence" supported a "fair and just reason" for withdrawing his guilty plea.

THE COURT:          There's no newly discovered evidence here. At most, there's a new theory on the strength of the evidence that existed when the defendant pled. That's the forensic report that the defendant relies on. But that's not new evidence. Its [sic] evidence that the defendant didn't choose to gather until shortly before the date of sentencing. And it's not new evidence in any event. As I said, it's perhaps a new theory as to the strength of the Government's case, but it's not new evidence.

(Sent. Tr., at 7-8). As the Court noted, the information provided in the forensic report, while new to Hawthorne, was not exactly "newly discovered evidence" consistent with Fed. R. Crim. P. 11(d). *See United States v. Ortego-Ascanio*, 376 F.3d 879, 883 (9th Cir. 2004) ("Fair and just reasons for withdrawal include inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered his plea."). The fact is that the evidence was not new, but it was also not properly investigated until "shortly before the date of sentencing."

An attorney has a constitutional duty to investigate the facts and circumstances of a case as well as possible defenses before a defendant pleads guilty. *Smith v. Mahoney*, 611 F.3d 978, 987 (9th Cir. 2010). In *Smith*, the Ninth Circuit held:

The defense lawyer engaged in almost no investigation of the facts of the crime either. The lawyer interviewed "about four or five" of the thirty-five potential witnesses attached to the charging document. The lawyer never visited the scene of the crime or hired an investigator. The defense lawyer himself conceded that he "did not feel a need to go beyond anything that Mr. Smith" told him.

In addition to a duty to investigate, defense counsel must ensure that the defendant understands his plea. A defendant must possess "an understanding of the law in relation to the facts." *Boykin v. Alabama*, 395 U.S. 238, 243 n. 5, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). A guilty plea is only valid if it "represents a

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE, SET ASIDE, OR CORRECT
SENTENCE PURSUANT TO 28 U.S.C. § 2255 - 8

voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

Smith's defense attorney did not ensure that Smith fully understood the alternative courses of action available to him. Although Smith's lawyer was on notice that Smith had been a habitual drug user and that he wanted to die-both facts that might have developed into mitigating circumstances with the right investigation-Smith's lawyer conceded that he did not discuss with Smith "anything that would have operated as a viable defense in this case."

Montana further contends that Smith's lawyer's decision not to request a psychiatric evaluation was a strategic choice and thus subject to little judicial oversight. The defense lawyer stated that his decision was strategic because he would have had to tender the results of the evaluation to the prosecution. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)).

However, any strategic decision must be reasonable. *Jennings*, 290 F.3d at 1014 ("Although defense counsel is empowered to make such strategic decisions, *Strickland* demands that such decisions be reasonable and informed."). "[D]ecisions that are made before a complete investigation is conducted are reasonable only if the level of investigation was also reasonable." *Duncan*, 528 F.3d at 1234. Read with the rest of the attorney's testimony, his statement on strategy appears to be more of an afterthought than anything else, and additionally does not make sense. Smith could not have been harmed had the evaluation turned up evidence that Smith suffered from a psychiatric condition and the prosecution found out about it. Had the evaluation turned up no evidence of psychiatric problems, the sentencing would have proceeded as it did. *Because Smith's defense lawyer failed to investigate Smith's mental state at the time of the crime, failed to investigate the facts surrounding the crime, and failed to discuss possible defenses with Smith, his representation fell below an objective standard of reasonableness given the prevailing legal norms at the time.*

*Smith v. Mahoney*, 611 F.3d 978, 988-89 (9th Cir. 2010). In the instant case, it is clear that

Hawthorne's defense counsel failed to investigate the facts of the case and failed to discuss with

Hawthorne potential defense strategies. Consistent with Hawthorne's declaration dated August

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 - 9

20, 2012, Hawthorne had requested his attorney review the discovery with him in both cases on several occasions. Moreover, Hawthorne stated that his attorney was aware that several of the electronic files were corrupted. However, it was not until Hawthorne's family hired a forensic analyst on their own that the question of the strength of the Government's case against Hawthorne came to light.

As the *Smith* Court discussed, counsel had a constitutional duty to perform a reasonable investigation into the facts of the case and discuss potential defenses *before* entering a guilty plea. It is clear from the record that this did not occur, and Hawthorne did not discover this potential defense until well after his guilty plea was entered. The Court characterized the forensic report as a theory as to the strength of the Government's case, but not new evidence. In other words, the forensic report was a potential defense that counsel failed to adequately investigate and discuss with Hawthorne. The *Smith* Court ultimately found that the defendant was not "prejudiced" by counsel's errors because the defendant "never denied his acts of suggested pleading not guilty. Smith has never denied his guilt-in fact, he has admitted to it more than once-or sought to withdraw his plea." *Smith*, at 992. However, Hawthorne did in fact seek to withdraw his guilty plea.

Hawthorne's counsel provided constitutionally ineffective assistance with regard to the advice and counsel concerning Hawthorne's guilty plea. But for counsel's deficient performance, Hawthorne would not have entered guilty pleas and instead would have proceeded to trial. The record fully supports Hawthorne's contentions, and Hawthorne and multiple third parties will submit declarations attesting to the same forthwith.

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 - 10

## V. <u>EVIDENTIARY HEARING</u>

Pursuant to 28 U.S.C. § 2255, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall… grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). Here, Hawthorne presents cognizable claims that are supported by the record. Therefore, the Court should promptly schedule this matter for an evidentiary hearing.

## VI. <u>CONCLUSION</u>

Based upon the foregoing, the Court should schedule this matter for an evidentiary hearing.

Dated: June 8, 2016

Respectfully submitted,

By:     <u>/s/ Jeremy Gordon</u>
        JEREMY GORDON, ESQ.